UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANONIA P.,[1]

|                          | Plaintiff  |                      |
|--------------------------|------------|----------------------|
|                          |            | DECISION and ORDER   |
| -vs-                     |            |                      |
|                          |            | 1:24-CV-00138-CJS    |
| COMMISSIONER OF SOCIAL   |            |                      |
| SECURITY,                |            |                      |
|                          | Defendant. |                      |

_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Plaintiff for Social Security Disability Insurance Benefits

("DIB") and Supplemental Security Income Benefits ("SSI").   Plaintiff maintains that such

determination is affected by errors of law and not supported by substantial evidence,

since the Administrative Law Judge ("ALJ") who denied her claim failed to "properly

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective
immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in
the United States District Court for the Western District of New York, any non-government party will be
identified and referenced solely by first name and last initial."

evaluate [her] well supported subjective complaints,"[2] as more specifically set forth

below.   Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF

No. 8) and Defendant's cross-motion for the same relief (ECF No. 16). For reasons

discussed below, Plaintiff's application is denied, Defendant's application is granted, and

the matter is dismissed.

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step

sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20
> C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether
> the claimant is currently engaged in substantial gainful activity. If he is not,
> the Commissioner next considers whether the claimant has a severe
> impairment[3] which significantly limits his physical or mental ability to do
> basic work activities.[4] If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in the regulations [or medically equals a listed
> impairment].   Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe impairment, he
> has the residual functional capacity [("RFC")] to perform his past work.[5]

---

[2] ECF No. 8-1 at p. 1.

[3] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable
physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a
combination of impairments that is severe and meets the duration requirement.' *Id.* If not, the claimant is
deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see
also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your
impairment(s). If you do not have a severe medically determinable physical or mental impairment that
meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets
the duration requirement, we will find that you are not disabled.").

[4] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities.
When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.
Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing,
pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3)
Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding
appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a
routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[5] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his

>Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[6]

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501

---

impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[6] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

(2d Cir. 1998); *see also, Barnaby v. Berrhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other

words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the Commissioner, but it may consider evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y.

6

June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.    The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.    In this regard, since Plaintiff's arguments involve the ALJ's assessment of her mental impairments, the Court will focus on that aspect of the record.

In July 2020, Plaintiff filed applications for DIB and SSI benefits, claiming to be disabled due migraines, anxiety, and back pain. Tr. 99, 111.    On November 25, 2020, the Commissioner had Plaintiff undergo a consultative psychiatric evaluation by Todd Deneen, Psy.D. ("Deneen"). Tr. 554-558.    Plaintiff reportedly told Deneen that she had been last employed as a mental health counselor, for a period of ten months, but had been fired "due to her poor attitude," and that she was currently unable to work due to "body pain." Tr. 554.    Plaintiff indicated that she had no history of mental health treatment, except for receiving anxiety medication from her primary care physician. Tr. 554.    Plaintiff reported mental health symptoms consisting of difficulty falling asleep, loss of appetite, crying, irritability, feelings of worthlessness, passive suicidal thoughts,

episodes of panic, mood swings, angry outbursts, and difficulty concentrating. Tr. 554-555.   Plaintiff reported using alcohol, in moderation, but not drugs of any type. Tr. 555. Plaintiff further reported that she performed personal care, shopping, laundry, cleaning, and cooking, "as needed;" that she drove herself; that she collected unemployment insurance benefits; [7] that she managed money unassisted; that she got along "moderately" with her husband and mother; and spent her day primarily watching television. Tr. 556.

Upon examination, Deeneen reported that Plaintiff's mental status was generally normal, including euthymic mood, average cognitive functioning, good insight and fair judgment.   However, Deneen indicated that Plaintiff also had depressed affect, mildly impaired attention and concentration, and impaired memory, all of which he attributed to "depression [and] possibly memory deficits." Tr. 556.   Deenen's medical source statement indicated, in pertinent part:

> The claimant will have no limitation with the following: Understand, remember, or apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and have awareness of normal hazards and take appropriate precautions.   She will have mild limitation with the following: Understand, remember, or apply complex directions and instructions, interact adequately

---

[7] Perhaps because of the overall weakness of Plaintiff's claim, the ALJ did not comment on this particular point, but Plaintiff's receipt of unemployment benefits is inconsistent with her claim of total disability. *See, e.g., Ashleigh L. v. Kijakazi,* No. 3:22-CV-675 (SVN), 2023 WL 6357000, at *10 (D. Conn. Sept. 29, 2023) ("The ALJ explained that, "[a]lthough unemployment is not considered work activity or dispositive on the issue of disability, ... in order to be eligible for unemployment benefits, an applicant must certify that he is ready, willing, and able to work." Courts in this Circuit have stated that a claimant's collection of unemployment benefits should not be the determinative factor in an ALJ's analysis of the claimant's disability, but they have recognized that it is a relevant consideration.") (citation and internal quotation marks omitted; collecting cases).

with supervisors, coworkers and the public, and sustain concentration and perform a task at a consistent pace.   She will have a moderate limitation with the following: Regulate emotions, control behavior, and maintain well-being.   The claimant's difficulties are caused by her cognitive deficits, lack of motivation, and mood symptoms.

Tr. 557.   Deneen estimated that the duration of Plaintiff's impairment was "one year," and that her prognosis was "fair," in part due to "her capacity to maintain continuous employment." Tr. 557.

The Commissioner denied Plaintiff's DIB and SSI applications, initially and upon reconsideration, finding, in pertinent part, that her mental impairments were not severe. As part of such analysis, Agency Review Physicians applied the "B Criteria" of the Listings for "depressive, bipolar, and related disorders," and "anxiety and obsessive-compulsive disorders," and found that Plaintiff had only "mild" limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 134, 148.   Additionally, agency review psychologist O. Fassler, Ph.D. ("Fassler") indicated that Deneen's findings supported such determination, stating:

> [Claimant] [a]ttended Psychiatric CE on 11/25/20. Endorsed depressive and anxiety sxs.   MSE reveals thought processes are coherent and goal directed.   Attention and concentration were mildly impaired.   Recent and remote memory skills were also mildly impaired.   The claimant recalled 3 out of 3 objects immediately, however 0 objects after 5 minute delay.   She was able to recite 5 digits forward and 4 digits backward.   The claimant shops, laundry, cleans and cooks and manages money.   Therefore, psychiatric impairment is non-severe.

Tr. 148.

Plaintiff requested a hearing before an ALJ, which was held on May 10, 2022, and September 20, 2022.[8]  When asked how she supported herself financially, Plaintiff indicated that for about "a year or so" her daughter had been paying her $125 per week to babysit for her year-old grandson for forty hours, while the child's mother worked. TR. 84.

On January 25, 2023, the ALJ issued a Decision finding that Plaintiff was not disabled at any time during the period of alleged disability. Tr. 10-27.   The ALJ found, in pertinent part, regarding the first three steps of the sequential evaluation, that Plaintiff had not engaged in SGA since the alleged disability onset date; that she had severe impairments consisting of asthma and anxiety disorder; that she had non-severe impairments consisting of hypertension, kidney disease, thoracic disc disease, knee effusion, migraine disorder, and obesity; and that such impairments, either singly or in combination, did not meet or medically equal a listed impairment.

In his step-three analysis of Plaintiff's mental impairments, the ALJ applied the "paragraph B criteria" to the specified areas of functioning, and found that Plaintiff had "mild" limitations in the areas of "understanding, remembering or applying information," "interacting with others," and "adapting or managing herself"; and "moderate" limitation in the area of "concentrating, persisting or maintaining pace." Tr. 15.   Regarding both the areas of "understanding, remembering, or applying information" and "concentrating, persisting or maintaining pace," the ALJ noted that despite Plaintiff's complaints, she was

---

[8]  The first hearing was postponed by the ALJ, since Plaintiff had not provided adequate information about her work history.

still able to do things such as cooking and shopping:

> The claimant can understand, remember and apply information sufficient to perform simple and multi-step tasks, such as those associated with cooking and shopping, specifically, cooking requires gathering ingredients, cooking tools and utensils, arranging and adding the food according to a recipe, using a cooking method to prepare the food and cooking it for a specific amount of time and shopping requires preparing a list of items that are wanted or needed, going to the store, finding and selecting the items, and paying for the items.
>
> ***
>
> The Claimant had coherent and goal directed thought processes, and she retains the concentration, persistence and pace to perform simple and complex tasks.  For instance, the claimant reports that she cooks three times and shops.  Cooking requires multiple steps such as gathering ingredients, cooking tools, putting them together and preparing them using any number of cooking methods and shopping requires determining what items are needed or wanted, going into the store, finding and selecting the items and paying for them.

Tr. 14-15.   Also, in the "paragraph B" area of "adapting and managing herself," the ALJ

observed that Plaintiff was able to care for her two-year old grandson:

> As for adapting or managing oneself, the claimant has experienced a mild limitation.   The claimant also watches her grandson, who just turned two, and given that he is of such a young age, this would require constant concentration and persistence to maintain the vigilance required to watch a child his age.
>
> ***
>
> The claimant's insight and judgment are fair and she has demonstrated the ability to be aware of and avoid normal hazards as she drives and watches a two-year-old [child].

Tr. 15.

Prior to reaching step four of the sequential evaluation, the ALJ found that Plaintiff

had the following RFC:

Claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can have no more than occasional exposure to irritants such as odors, fumes, dusts, gases and poor ventilation.   The claimant is limited to simple, routine tasks that can be learned after a short demonstration or within thirty days. The claimant cannot perform work that requires travel to unfamiliar places.

Tr. 16.   The ALJ explained this finding, as it pertained to Plaintiff's non-exertional limitations, by stating:

The claimant maintains that she cannot work due to memory loss and confusion.  While the claimant's representative points out that there are many subjective complaints in the record, he admits that there is not much, if anything in the way of objective findings to support a conclusion that this is a medically determinable impairment and that it causes substantial functional limitations.[9]   In January 2022, the claimant's husband reported that the claimant was confused, but a treating doctor noted that while she had some sensory deficit over her face and answered some orientation questions wrong, overall, her physical examination was unremarkable and her complaints were vague and nondescript.   The claimant's work up was un[re]markable and the claimant's condition improved to baseline in a matter of hours.   Notably, the claimant's toxicity screening was notable for marijuana, which can, sometimes, be obtained in an unregulated setting and can, at times, cause an altered mental state.   The claimant visited a neurologist, and the record show[s] that her brain MRI was inconsistent with a finding of significant memory loss or confusion.   The examining neurologist referred the claimant for further testing, which the claimant maintains has not been done because no one from the neurologist's office has called her back.   At a November 2020 consultative examination, the claimant was fully oriented with coherent and goal-oriented thought processes, inconsistent with confusion.   The claimant had some deficits with short term memory as she could not recall any of three items after five minutes, but the claimant was able to remember remote information, such as living in the same house since 2019, who she lived with, her legal history

_____

[9]  The ALJ was evidently referring to counsel's statement at Tr. 45-47, where he indicated that the hospital treatment notes, from when Plaintiff went to the ER complaining of confusion, which showed completely negative test results except for a positive toxicity screen for cannabis, were "probably the closes thing to objective memory loss evidence we have." Tr. 45.

and her employment history.  The claimant remembered some recent details as well, such as how well she gets along with others, and what she does most days.  The claimant's admitted activities are also inconsistent with significant confusion and memory loss.   For instance, the claimant can manage her money unassisted, which requires remembering and applying mathematical and financial concepts, she shops, which requires the claimant to determine which items she needs, obtain the items, pay for them and return with them and the claimant drives, which she would be unlikely to successfully do if she has significant problems with confusion and memory.

Tr. 21.

Regarding the prior medical determinations and opinion evidence, the ALJ indicated, first, that he did not completely agree with the opinions of the agency review psychologists, including Dr. Fassler, who had found that Plaintiff had only mild limitations in the "paragraph B" general areas of functioning.   The ALJ found, rather, that Plaintiff had greater, moderate, limitations in the area of concentrating, persisting and maintaining pace.   Because of that, the ALJ found it appropriate to limit Plaintiff to work involving simple, routine tasks. Tr. 23.   The ALJ also partially disagreed with the opinion of Dr. Deneen, insofar as it found that Plaintiff would have moderate limitation in regulating emotions, controlling behavior and maintaining well-being. Tr. 23.   The ALJ found that such opinion reflected Plaintiff's subjective complaints to Deneen, but was not consistent with the record overall. Tr. 24.   In particular, the ALJ stated:

[Deneen] finds that the claimant would have a moderate limitation in regulating her emotions, controlling her behavior and sustaining her well-being in the workplace, but this appears largely based on the claimant's self-reporting, as during the examination, the claimant was symptomatic with depressed affect, but she was able to control her behavior cooperative [sic] and her social skills were adequate in spite of being symptomatic,

13

suggesting that the claimant can control her behavior.   The claimant has often demonstrated normal mood and behavior and even when her mood has been anxious her affect and behavior have generally been normal and she had no generally not [sic] had difficulty interacting with providers.   The record also shows that the claimant's psychiatric symptoms were very responsive to treatment, demonstrating that the claimant could regulate her emotions.   So, the record is inconsistent with Dr. [Deneen's] opinion that the claimant has a moderate limitation in this domain.

Tr. 24 (citations to record omitted).

The ALJ then found that with such an RFC, Plaintiff could perform her past relevant work, or alternatively, she could perform other work, and was therefore not disabled. Tr. 24-26.   Plaintiff appealed, but the Appeal Council declined to review the ALJ's decision, thereby making the ALJ's decision the Commissioner's final decision. Tr. 1.

In this action Plaintiff contends that the ALJ erred when evaluating her subjective complaints about her anxiety symptoms. *See*, Pl. Memo of Law, ECF No. 8-1 at p. 6 ("[T]he ALJ persistently diminished the value of Plaintiff's subjective symptoms, particularly concerning anxiety disorder."); *see also, id*. at p. 10 ("[T]he ALJ used his own personal opinion and unsupported extrapolations to diminish the severity of Plaintiff's subjective complaints.").   In this regard, Plaintiff takes no issue with the ALJ's analysis of her physical complaints, which comprises the bulk of his decision.

As proof of the ALJ's alleged improper "diminishment" of her subjective symptoms, Plaintiff first contends that the ALJ improperly "rejected" portions of Dr. Deneen's consultative opinion, since "they appeared largely based on the claimant's self reporting." ECF No. 8-1 at p. 7.   In particular, Plaintiff is referring to the ALJ's decision not to accept Deneen's opinion that Plaintiff would have "moderate limitations in regulating emotions,

14

controlling her behavior, and sustaining wellbeing in the workplace." *Id*.    Plaintiff maintains that the ALJ erred by referring pejoratively to Deneen's reliance on Plaintiff's subjective complaints, since medical practitioners necessarily have to rely somewhat on a patient's self-reported symptoms. *Id*. at 8.

The Court agrees that it would have been error if the ALJ had rejected Deneen's opinion simply because it was based in part on Plaintiff's subjective complaints. [10] However, that is not what the ALJ did here.   Rather, the ALJ noted first, when evaluating Deneen's opinion that Plaintiff would have moderate limitations regulating her emotions, controlling her behavior, and sustaining her well-being in the workplace, that it appeared to have been based on what Plaintiff told him, as opposed to what he observed, since Deneen's own reported observations of Plaintiff's behavior were inconsistent with her being unable to regulate her emotions or control her behavior due to anxiety or depression:

> Dr. Todd [Deneen] finds that the claimant would have a moderate limitation in regulating her emotions, controlling her behavior and sustaining her well-being in the workplace, but this appears largely based on the claimant's self-reporting, *as, during the examination, the claimant was symptomatic with depressed affect, but she was able to control her behavior [and be] cooperative, and her social skills were adequate in spite of being symptomatic*[.]

Tr. 24 (emphasis added).   In other words, Deneen never observed the behavior he was predicting would cause Plaintiff to have moderate difficulty in the workplace.   It was not

---

[10] *See, e.g., Kelly Ann G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1013 (CFH), 2022 WL 160266, at *6 (N.D.N.Y. Jan. 18, 2022) ("An ALJ may not reject a medical opinion solely because it relies on a plaintiff's subjective complaints.") (emphasis in original).

improper, when weighing Deneen's opinion, for the ALJ to point out that Deneen's opinion was seemingly inconsistent with what he reported observing.

The ALJ then indicated that Deneen's opinion on that point was also inconsistent with the record overall, stating:

> The claimant has often demonstrated normal mood and behavior and even when her mood has been anxious her affect and behavior have generally been normal and she has generally not had difficulty interacting with providers.   The record also shows that the claimant's psychiatric symptoms were very responsive to treatment, demonstrating that the claimant could regulate her emotions.   So, the record is inconsistent with Dr. Todd's opinion that the claimant has a moderate limitation in this domain.

Tr. 24 (citations to record omitted).

Consequently, the ALJ did not say that Deneen should not have relied on what Plaintiff told him, but rather, that what Plaintiff told Deneen was inconsistent both with her behavior during the consultation and with the record overall.   It was not error for the ALJ to partially discount Deneen's opinion for these reasons.

Plaintiff, though, contends that the ALJ erred, since, when he found that Deneen's opinion was inconsistent with Deneen's own reported observations during the examination, the ALJ was "setting his 'own expertise' against that of Dr. [Deneen]." ECF No. 8-1 at p. 8.   However, the Court again disagrees.

In this regard, it is true that, "[w]hen weighing medical opinions," "[t]he ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-5 (JGLC) (BCM), 2024 WL 992197, at *17 (S.D.N.Y. Feb. 20, 2024) (quoting

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)`, report and recommendation adopted, No. 23-CV-5 (JGLC), 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024).

However, an ALJ does not violate that rule merely by pointing out that a doctor's opinion is contrary to, or unsupported by, his own examination notes. *See, Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("The ALJ did not impermissibly 'substitute [her] own expertise or view of the medical proof for the treating physician's opinion.' *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015). Rather, the ALJ rejected Dr. Wolkoff's opinion because she found it was contrary to his own treatment notes."); *see also, Holly S. v. Comm'r of Soc. Sec.*, No. 3:23-CV-992 (BKS/MJK), 2025 WL 368766, at *4 (N.D.N.Y. Feb. 3, 2025) ("[T]he ALJ's determination that Dr. Touchstone's findings do not support his opinion is not "beyond the scope" of the ALJ's authority and does not constitute a "substitut[ion] [of the ALJ's] own expertise or view of the medical proof for the treating physician's opinion.   Indeed, the court in *Monroe v. Comm'r of Soc. Sec.* explicitly rejected such an argument, explaining that "[t]he ALJ did not impermissibly 'substitute [her] own expertise or view of the medical proof for the treating physician's opinion.'   Rather, the ALJ rejected [the treating physician's] opinion because she found it was contrary to his own treatment notes." 676 Fed. App'x at 8 (quoting *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015)).") (citations omitted).

Moreover, the ALJ's finding that Deneen's opinion was unsupported and inconsistent with the record overall is supported by substantial evidence.   Indeed, the only negative findings in Dr. Deneen's report are depressed affect, mildly impaired attention and concentration, and impaired memory, and Plaintiff did not indicate that her

symptoms from anxiety or depression caused her any difficulty in controlling her behavior or maintaining her well-being.    Consequently, Deneen's opinion that Plaintiff would have moderate difficulty controlling behavior and maintaining well-being appears unsupported.

As for Deneen's opinion that Plaintiff would have moderate difficulty regulating emotion, it is at least supported by Plaintiff's subjective reports of irritability, mood swings, angry outbursts, and her report of having been fired once for having a bad attitude. (Although, she also indicated that she had never been fired from a job because of problems getting along with other people, Tr. 354.)    However, the ALJ nevertheless found this opinion unpersuasive, since the record overall showed that, despite what Plaintiff claimed, she was routinely observed by other medical providers to display normal mood, affect, and behavior, even when she claimed to be experiencing symptoms of anxiety, depression, or other illness. Tr. 24 (referencing Exhibits 2F/8, 20F/23, 26, 73, 14, 19, 13F/10, 5F/3, 2F/33, 1F/5); Tr. 425 (appropriate behavior, interacts appropriately, cooperative, denies suicidal thoughts); Tr. 790 (pleasant, normal mood and affect); Tr. 793 (denies anxiety and depression, normal mood and affect); Tr. 840 (normal mood and behavior); Tr. 781 (displays anxiety but normal affect); Tr. 779 (reports anxiety and anger issues but denies depression, denied any difficulty interacting with others or meeting daily needs); Tr. 786 (normal mood and affect); Tr. 577 (normal mood and behavior); Tr. 516 (anxiety but normal affect); Tr. 450 (normal mood, affect, behavior); Tr. 413 (negative for depression, normal mood, affect, and behavior).

Plaintiff, though, contends that it was error for the ALJ to cite her "social skills and ability to interact with [medical] practitioners" as evidence that she was less-than-

moderately limited in "regulating emotions, controlling her behavior, and sustaining wellbeing in the workplace." ECF No. 8-1 at p. 8.  In particular, she states that the relevant Commissioner's regulation, 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00E4, cites factors other than what the ALJ discussed, and that the ALJ therefore improperly relied on his own lay opinion of what it means to regulate emotions, control behavior, and sustain wellbeing. *Id*.  In this regard, the Commissioner's regulations state in pertinent part:

> Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 CFR Pt. 404, Subpt. P, App. 1, § 12.00E4.

The Court understands Plaintiff to be primarily arguing that her ability to behave appropriately and control her emotions while visiting doctors, which, as the ALJ noted, is well-documented, is not relevant to whether she can adapt or manage herself in a work setting, and consequently, it was error for the ALJ to rely on such evidence to discount Deneen's opinion that she would be moderately limited in this area of functioning. However, the Court again disagrees, and finds that the ALJ could properly consider such evidence. *See, e.g., Pinckney v. Comm'r of Soc. Sec.*, 853 F. App'x 347, 351 (11th Cir. 2021) ("Finally, the evidence supports a finding that Pinckney had only moderate

limitations in her ability to adapt or manage herself. Pinckney was consistently noted as being either appropriately- or well-groomed and hygienic, and examiners noted that her attitude and behavior were proper and normal. Notably, Pinckney exhibited normal adaptive behavior and no impairment in adaptive functioning while incarcerated. And, at the time of her most recent examination, the examiner noted that she exhibited good behavioral control. In light of these facts, we cannot say that the ALJ's decision is not supported by substantive evidence in the record.") (citation omitted).

In sum, the Court finds no merit to Plaintiff's contention that the ALJ's decision not to adopt Deneen's opinion that Plaintiff would have moderate limitations regulating her emotions, controlling her behavior, and sustaining her well-being in the workplace, was legally erroneous or unsupported by substantial evidence.

Plaintiff nevertheless contends that the ALJ also erred by citing her daily activities as evidence of her ability to perform the mental requirements of work.  In particular, Plaintiff first maintains that the ALJ improperly relied on her ability to "cook and shop" as evidence of her mental ability to perform functions requiring multiple steps, since Plaintiff claimed that she only made "simple meals." ECF No. 8-1 at p. 9.  Plaintiff also argues that the ALJ improperly relied on her admitted ability to care for her toddler grandson, for forty hours per week, as evidence that she could maintain concentration and persistence, purportedly since caring for a child has a degree of flexibility that the workplace does not have. ECF No. 8-1 at p. 9.  However, the Court again disagrees.

Plaintiff indicated, in an Adult Function Report, that she "prepared meals" on a "daily" basis, and when asked to give examples, listed "toast, salad, veggies, eggs,

sandwiches." Tr. 351.   Therefore, Plaintiff contends that the ALJ should not have cited her ability to cook as evidence of her ability to concentrate or follow multiple steps in a process.   However, in the same report, Plaintiff also indicated that her ability to cook was unaffected by her alleged onset of symptoms. Tr. 351 ("Any changes in cooking habits since the illness, injuries, or conditions began?   No."). Plaintiff also stated that she was able to go shopping "when necessary, time depends on what I'm shopping for." Tr. 352. Additionally, as the ALJ observed, Plaintiff told Deneen that in addition to driving a car, she did "shopping, laundry, cleaning, and cooking as needed," without limitation. Tr. 15, 556.   Further, as to Plaintiff's ability to cook, a reasonable inference from the record is that Plaintiff, who lived with her husband and at least one daughter, cooked for the family, and not just herself. *See, e.g.*, Tr. 899 (Husband indicated that he returned home from work at 7 p.m. at which time Plaintiff was "making dinner."); *see also*, Tr. 890 (Reference to Plaintiff having episode of confusion while making "chicken curry").   Consequently, since there is substantial evidence that Plaintiff was not limited to making only simple meals, contrary to what she claims, it was not erroneous for the ALJ to cite her ability to cook and shop as support for his RFC finding.

Similarly, the Court finds that it was not erroneous for the ALJ, when assessing Plaintiff's mental RFC, to consider Plaintiff's admitted ability to babysit for a two-year-old toddler, forty hours per week.   As this Court has previously indicated, an ALJ may consider such evidence in a proper case:

> Preliminarily, the Court finds that the ALJ did not err in considering, or in giving improper weight to, Plaintiff's ability to care for her children. On this point, it is clear that there is no *per se* prohibition on an ALJ considering a

21

claimant's ability to perform childcare duties. *See, e.g., LaValley v. Colvin*, 672 F. App'x 129, 131 (2d Cir. 2017) ("An ALJ must consider a claimant's testimony, but may look to other evidence in determining credibility. *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). Here, the ALJ considered various sources of evidence and justifiably declined to give less than determinative weight to LaValley's testimony regarding the debilitating effects of her pain. For example, the ALJ looked to LaValley's daily routine; she stated that she could clean the house, do laundry, dress and bathe herself, and perform childcare, among other activities. See 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" as an appropriate consideration in determining a claimant's level of pain)."); *see also, Gabrielle C.-T. v. Comm'r of Soc. Sec.*, No. 23-CV-523 (JLS), 2024 WL 5232839, at *6 (W.D.N.Y. Dec. 27, 2024) ("[T]he ALJ was permitted to consider Plaintiff's ability to care for her child in formulating the RFC.") *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (ALJ properly considered plaintiff's ability "to engage in complex tasks" such as childcare); *Poupore [v. Astrue*,], 566 F.3d [303,]307 [(2d Cir. 2009),] ("[T]he ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer").

On the other hand, an ALJ cannot simply cite a claimant's ability to care for her children (or to engage in other activities necessary to her own welfare) as a basis to deny benefits or to disregard other evidence of disability, where such activities of daily living do not "truly show that the claimant is capable of working[.]"

In the instant case, the ALJ made a few references to Plaintiff's ability to care for her four children notwithstanding her mental impairments. More specifically, the ALJ mentioned Plaintiff's childcare activities in the context of discussing her ability to understand, remember or apply information and her ability to adapt or manage herself.   The ALJ also cited Plaintiff's ability to perform childcare activities as one of several pieces of evidence supporting the opinion of Dr. Ransom that Plaintiff could accomplish simple tasks, maintain a routine, relate adequately, and deal with stress.

***

Considering the ALJ's decision as a whole, the Court cannot agree with Plaintiff that the ALJ erred by unfairly considering Plaintiff's ability to perform

childcare duties when making any of his various findings.

*Sonia M. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06604-CJS, 2025 WL 653474, at *7 (W.D.N.Y. Feb. 28, 2025) (Siragusa, J.) (citations omitted).

Here, the Court finds that it was not error for the ALJ to cite Plaintiff's ability to provide full-time care for a toddler, when assessing her ability to adapt and manage herself, and to maintain concentration and persistence, particularly since she was doing it on a full-time paid basis, forty hours per week.

Finally, Plaintiff asserts that the ALJ erred by relying on his own opinion when suggesting that Plaintiff's altered mental state on one occasion, in January 2022, when she tested positive for marijuana, may have been due to such marijuana use, since her doctors didn't draw that same conclusion. *See*, ECF No. 8-1 at p. 10 ("Nowhere in the cited record does Plaintiff's medical team link Plaintiff's altered mental state –which included confusion and disorientation—to marijuana use.").   However, the Court again disagrees.

Preliminarily, the Court finds that the ALJ could reasonably infer from the evidence that Plaintiff's confusion on that occasion was related to ingesting marijuana.    In this regard, the record contains multiple references to Plaintiff smoking marijuana and ingesting marijuana "edibles." Tr. 599, 693, 812, 890 (referring to Plaintiff's use of "illicit" marijuana, ostensibly to treat migraine headaches).   Moreover, when Plaintiff went to the emergency department on January 10, 2022, complaining of confusion, the attending physician ordered the toxicology screen, observing that her symptoms could have been caused by something she had ingested. Tr. 906 ("t[ox] screen will be added as well as

medication interactions versus *toxic encephalopathy* is on the differential albeit this would be difficult to prove as positive t[ox] screens do not necessarily indicate acuity of ingestion.") (emphasis added).    Moreover, from the battery of tests that was performed on Plaintiff that night, the only positive finding was for her use of cannabis, a Schedule I controlled substance.    Consequently, although the medical record does not expressly state that Plaintiff's confusion on that occasion was related to her use of marijuana, the inference could arguably be drawn, based on the process of elimination.

However, even assuming, in the alternative, that the ALJ's comment amounted to improper speculation, any error was harmless.    In this regard, it is not as though the ALJ relied on such speculation to reject a contrary finding or opinion of a medical provider. Rather, the only relevant findings from that medical encounter were that Plaintiff claimed to have experienced a brief period of confusion while cooking dinner, no cause for such confusion was officially determined by the hospital staff, and she quickly returned to baseline and was discharged. *See*, Tr. 904 ("It is unclear what exactly may have caused her symptoms today.  . . .  Primary Impression:  Transient confusion."); *see also, id*. ("Given that your work-up thus far here in the emergency department has been largely unremarkable, and that you appear to be back to your baseline mental status, it is felt that you are stable for discharge home at this time.").    The ALJ's speculation about the cause of the incident was truly harmless, since the brief ER visit, for which no cause was ever stated, did not, in any event, provide support for Plaintiff's disability claim or for greater limitations in the RFC finding related to mental functioning.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 8) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 16) for the same relief is granted, and this action is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
        August 27, 2025

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

25